Your argument next in case number 22-1950 in Re Wa Wa Data Security Litigation versus Frank. Mr. Shulman. Good morning, your honors. Adam Shulman for Appellant Frank. I don't want to, may I reserve six minutes for rebuttal, please? Did you say six minutes? Yes, six of the 15. Okay, great. A continuous line of this circuit's precedent has held that cases are best decided on the economic reality of the situation. That's the rule of decision under 23E, 23H, class actions in general. The court below contravened that line of cases by deciding that valuing the Constructive Common Fund at $12 million, even though it knew that the $6 million of those dollars would never be leaving the pocket of Wa Wa Wa, that there was no likely possibility, no realistic possibility from the baby products and prudential. This court should reverse for, and instruct the court to follow the correct rule, which is to value the Constructive Common Fund based upon the amounts that are actually paid out. No court... So are you seeking, just so I understand, are you seeking a new legal standard akin to something like that in the PSLRA, or are you simply saying this was an abuse of discretion under the court's precedent and more scrutiny was necessary? We think that the legal standard is the amount actually paid out. If it wasn't, we think that it has long been the line in this circuit, starting, beginning with GM Trucks, which used the language of reasonable assessment through baby products. We think that that line of precedent was confirmed by the 2018 amendments very clearly by the addition of Rule 23 E2C 2 and 3, which required the court to take into consideration the effectiveness. Because if a court was able to value a Constructive Common Fund at amounts that were hypothetically available but had no realistic hope of paying out, then it's essentially writing E2C 2 out of the amendments. But doesn't Boeing specifically allow consideration of the funds available? Not in this circumstance, Your Honor. We list in the brief the three reasons why that's not the case. The first reason being that Boeing was a litigated judgment, not a settlement. Pearson... That could also go against you here, because as the District Court pointed out, this was a collusion. Well, the mediator is not dispositive of... The mediator is there to get the parties to yes. The mediator is not there to protect and safeguard the interests of the class members. In this case, I think there's reference in the record that the mediator said that this was, you know, this settlement was conducted at arm's length and there was no collusion, right? And so the District Court has to consider that. Correct. That's the 23E2B factor, I believe, the arm's length negotiation, but it doesn't go to the substantive 23E2C factors. And in Briseno, one of the only cases reviewing the 2018 amendments, there was a mediator declaration that was also relied on by the District Court that obviously was not dispositive of how the appeals court looked at the 23E2C factors. Didn't you raise the same argument in Baby Products and we rejected it as a rule of the law? And so how would we apply it here, given our prior holding? Well, the holding of Baby Products was to reverse the settlement approval in that case. There was dicta in Baby Products that Boeing might apply in that circumstance. But the facts of those circumstances are completely separate from the facts of this settlement. That was a settlement where if the class, if the money went unclaimed, it would go to a third-party indirect SIPRE beneficiary, which had its own set of problems, of course. But it certainly, the language about being an equally valuable deterrent, the defendant was paying out money. It wasn't just saying we're making this available and not paying it out. Well, but the considerations were similar in that class counsel's motivation is relevant to the amount of funds actually claimed by class members, right, in both here and in Baby Products. So, I mean, whether the money reverts to the defendant or whether it goes to a SIPRE awardee, you know, what the court is really looking at when deciding whether to look at funds claimed or funds available is class counsel's motivation to benefit the class. Exactly. I think if, to set up the best incentive for class counsel to benefit the class and to make them the foremost beneficiaries, as this court in Baby Products said, you have to have the rule that it's the actual payouts that matter. So are you asking us, just to be very clear, are you asking us to hold that there is a per se rule that in situations like this, where claims made are smaller than the claims available, that the court must consider percentage of recovery based on claims made? That would be the denominator. Under the Rule 23 as it currently exists post-2018, that was the rule of law held in Pearson. That was the rule of law held in Briseño. Okay. So you're saying that that is, you know, the district court would abuse its discretion if it were to consider the funds available. Is that what you're asking? Correct. Consider unpaid amounts in the constructive common fund valuation is, at least in a circumstance where none of the Baby Products factors apply. So another factor, Baby Products said, we don't want to penalize class counsel for indifference of the claims that was not, that they have no culpability for, essentially. It was just a function of the size of the claim in the first place. How do you reconcile what you're asking us to do with the fact that the district courts have discretion to not use percentage of recovery methods at all, and you can just use Lodestar? For attorney's fees. But under a 23 E2C2 analysis, they would have to look at the proportionality, right? That's E2C3, that you have to look at the recovery in light of the negotiated attorney's fee. And when E2C3 talks about recovery, it's talking about amounts actually paid. Speaking of attorney fees, part of the appeal in this case is the award of attorney fees of 3.2 million in the class settlement. Could you comment on that, whether that's appropriate or not? So our position is that that is out of proportion to what the class is recovering. Their class is recovering a distribution of 2.9. And there's record evidence that 99% of that 2.9 is in gift cards, it's not in cash. But you haven't preserved the appropriateness of the 3.2 million or the issues about gift cards versus cash, is that correct, for this appeal? As a CAFA issue. We have not preserved the Class Action Fairness Act that they count as a coupon. That's true. But what do you mean by that? So the only issue here, as I understand it, is whether the district court have used its discretion in awarding the 3.2 million in attorney's fees relative to the funds that were either available or claimed. And that goes to the proportionality. So there's an issue in the briefs about whether we object, whether we've maintained that it is an unfair settlement. Our main contention all along, and we've cleared this up in the reply brief, is that it was in a position where if the district court reduced the amount of the fee, it would have recalibrated the settlement properly. Because the amendment that we reached with Wawa was to get rid of the fee reversion, which itself would have prevented the reallocation. It would have meant that if the, originally, if, and I'm almost over time, originally, if the fee would have been reduced, it would have gone back into Wawa's pockets. That's a problem under Briseno. Briseno is very Pearson. The problem of having a segregated fee in the first place is it prevents the court from. So that's in the past because you took care of that in the district court. Correct. And that's why we were able to, we can fix the unfairness of the settlement that exists through a Rule 23H objection. And maybe you could help me with one question. The district court valued the settlement at 9 million. Is that correct? It valued the amount, yes, plus the 3.2, right? Plus? Yeah, it valued it at 12.2 million, which was the 9 million available to the class, plus 3.2 for the fees. And then there was a value for gift cards as well. That was within the 9 million. Within the 9. And you take no objection to the, what amounts to 12.2 million total? We do. That's really the gist of our objection on appeal was that it shouldn't include the amount that were not paid out at all, which is 6 million of that. Okay. So you take, if you take the 6 million from the 12.2, that's, you would consider that fair? And then it's not fair because then the fee is 52% of the actual construction. And so you're saying that the district court shouldn't have been able to consider that additional funds were available. It also shouldn't have been able to consider that there was, I think it was approximately $35 million worth of injunctive relief that the defendants agreed to provide as a result of what the class. We did say, though, your honors don't have to reach that because the district court ultimately decided not to include that in the constructive common fund valuation. She didn't include it in the common fund, but she did note that it was relevant to her assessment overall of the appropriateness of the fees. We do think that was error because it was already provided for by the board of Wawa. Those funds were already accounted for well before the settlement, even perhaps. You're making a factual argument here that the district court improperly found that that was part of the relief in this case? Yes. And the legal argument is if we, if your honors think that that was within the discretion of the district court to conclude that that was some benefit under the law, she could have increased the percentage, maybe award 30%. But what you can't do is you can't award the 30% of a fictional number that had no hope of being paid out, that nobody thought was going to be paid out. Just one last thing, just to clarify. If the $2.8 million in gift cards were given to many of the, I suppose, shoppers? It was based on the loyalty program, that those who had downloaded the mobile app to Wawa would automatically get a gift card. Now, under the assumption, which there is no record evidence of, that those were the exact members of the class who had shopped there before. And $80,000 in cash? That's right. Okay. Thank you, counsel. Here you are on rebuttal. Thank you. Good morning, your honors. Judge Mady, and may it please the court. My name is Ben Johns. I'm here on behalf of the consumer plaintiff, Apelles. I'd like to start with talking about the standard of review here. The Third Circuit has held repeatedly and consistently that the standard of review for an appeal of an attorney's fee award is abuse of discretion. Mr. Frank doesn't come anywhere close to meeting that standard here. This is not a case where we came into court with a prepared, proposed order and handed it up to Judge Prater and she rubber-stamped it. To the contrary, there were thorough hearings, both with respect to preliminary approval. There was a hearing on final approval. There was briefing after the final approval hearing. Sometime after that, Judge Prater wrote a thorough 27-page opinion that went through the relevant factors from Gunter and from the baby products case, did a cross-check, and she concluded that the fee was warranted in a case where nearly $3 million in direct benefits were created, and among other factors, the fact that at that time, the lodestar represented a negative multiplier of .78. Now, Mr. Shulman doesn't say that in the class' best interest that any additional sums go back to the defendant versus recovery to the class, or even Cypre as it was in baby products. That was something that we negotiated at the mediation that we had with Judge Welsh, and as Mr. Shulman alluded to in his argument, that was ultimately removed from the settlement. There were a number of amendments to the settlement. This wasn't a case that we just settled and then walked away from and showed up at final approval. No, we had several calls with the court. We were in constant communication with Lawyers for Wawa and with the claims administrator. We monitored the claims process, and we made several enhancements to it that we thought were appropriate, and so that was one of the changes that we ultimately made. Could you clarify? What do you mean removed from the settlement? You're talking about $80,000 in cash settlement, and you say it was removed. Could you elaborate on that? Sure. Just to be clear, I was talking about the reverter and kicker thing in response to Judge which I think is what you're asking about, Judge Fuentes. $80,000 was cash. The rest of it was in the form of Wawa gift cards. Paid, however, to the class members. Correct. Yes. And the reason, and obviously we thought about this very carefully before we negotiated that. We're well aware of the line of cases that talk about what's considered a CAFA coupon versus a gift card like this, and what ultimately persuaded us, and I think you're going to hear some of this from my friend Mr. Parks, is that the Wawa data available to us showed that these things are essentially just like cash. 97.5 I think is the number of these cards historically at Wawa are used within a year or two. We had in the settlement a provision that they could be used for anything at Wawa aside from tobacco products, and there's something like 3,000 items that Wawa sells that would be $5 or less. So these are really valuable benefits. They're transferable. They don't expire. So given all that, we thought this was appropriate and a good result here, and ultimately Judge Prater agreed with that. Mr. Johns, did the district court believe it was constrained to consider the percentage of recovery using the full funds available, and it did not have the discretion to consider only funds claimed? I can't tell you what Judge Prater thought. I can tell you that she followed Boeing. She followed Baby and these other cases that I'm happy to get into by valuing the attorney's fees by reference to the funds made available, not even counting, as you pointed out earlier, Judge Freeman. It seems clear that she did not think that she could, and so let's assume that that is reflected in the decision. Then isn't that error that would require a remand at least to consider that? No, Your Honor, because there's a number of circuit cases that have said when a district court does that and only looks, essentially puts the blinders on and only looks at the claims results and calculates fees that way, that's legally erroneous. There's a case from the Second Circuit, the Masters case. There's a case from the Ninth Circuit, the Williams case. They both say that that was a case where the district court did essentially what Mr. Schulman is asking this court to do, and it went up and it was reversed. I think what we're asking about is whether maybe the opposite happened here, and the district court said, in her opinion, she says, Mr. Frank argues that you should consider claims made, and she says there's third circuit precedent to the contrary. This is page 18 of her opinion, 21 of the joint appendix. Because attorney's fees should be analyzed based on the entire constructed fund rather than the claims filed, this factor weighs in favor of the requested fee award. So she appears to think that she was bound to consider the claims available, and so would that itself be error because perhaps she didn't recognize her discretion? I don't think so, Your Honor. I think the judge appropriately followed the binding Supreme Court precedent and the baby precedent, and certainly the outcome here was within the court's discretion. Would it have been within her discretion to consider percentage of recovery based on claims made? Well, again, I think... And if not required, would it have been permissible? She could have looked at that, sure, but if that's ultimately the way these were decided, I would submit based on those two cases that I... And again, this isn't what happened, but if that's what would happen, I would submit that that was a legal error. But I'd like to just get back because I want to make it clear how, frankly, unflexible and unworkable this proposed rule is. One of the cases we cite is from the Sixth Circuit, the Gastro case, and it describes all these cases that I'm discussing with you. And it says, it describes this proposed rule that's being advocated here as an inflexible categorical rule and a per se rule of unfairness. And this is the rule that would essentially require or prohibit, excuse me, the district court from considering the value of the benefits made available. And do we already have that rule already? One of the things that you've negotiated is this, what's sometimes called a clear sailing clause, right? First of all, what is the benefit of that to the class? I suppose the benefit could be that there'd be fewer briefs filed on that. It doesn't, Wawa wouldn't... Well, you don't need to suppose when you're negotiating. But look, I mean, whether there's a clear sailing clause or not, one of the issues, we actually agree with Mr. Shulman on, is that the court is in a fiduciary capacity. When it's final approval, when Judge Prater is examining fees, she's a fiduciary stepping into the shoes to protect the class. So whether there's a clear sailing agreement or not, that doesn't change that important role that the district court has. And by the way... Just to go back, I'm sorry, did you answer the question of what... Whether it's a benefit to the class. What did you think the benefit was to the class when you negotiated? Honestly, Your Honor, it was probably just a matter of streamlining the process. That there wasn't much more to it. Okay. What do you do about NFL players' concussion litigation, where we said that when you have a provision like this, the district court should review itself, both the process and the substance, and see that it doesn't indicate collusion or otherwise pose a problem. But doesn't that suggest, we've already said, that there is a higher standard, a harder look, if you will, that goes into settlements that have certain qualities or attributes like the provision you've included? Well, there may be some accuracy to the... When there are things like that, the courts need to look closer at the issues with respect to the settlement. But I would submit that that was done here. Again, Judge Prater wrote a pretty thorough opinion based on the record and based on the hearings. So, we'd submit that these issues are largely decided already. Mr. Frank was actually the appellant in the baby products case. One way to think about this appeal, perhaps, is it's an untimely motion for reconsideration of that case. But what he was trying to do there was have this court adopt these rigid per se rules. And Judge Ambrose said, no, that was a 3-0 decision. There's another case that we cite in our brief. It's an unpublished Third Circuit case, but it's a 3-0 opinion nonetheless, the Landsmark v. Skinder-Strauss opinion, which relied on baby and rejected those arguments again. And it's a workable test because it's not just our case where this was applied. We cite a case from Judge Brody in the Comcast antitrust case where there was, after the dust settled following a claims process, it turns out that the attorney's fees were in excess of the class recovery. And so what baby says in that situation, in all situations, the inquiry for the district court is whether the class counsel adequately prioritized the direct relief to the class. So it seems to me that, yes, that is true, especially as compared, as baby products as compared to this case. You know, the interests of the class are similar. But, you know, the Cypre award in baby products is distinct from what you have here, right? And should that not affect our decision? Your Honor, I think that's respectfully not a meaningful distinction. First of all, the Landsmark case, that was not a Cypre decision. But I think the general principle is, you know, it's talking about when you come into court and say, we've settled this case and we've made this body of benefits available. And baby, it happened to be in the form of Cypre. But the point is, that's money that ended up ultimately not going to the class members. But it was also a deterrent on the defendant in that case, right? Unlike the, you know, the difference between the $6 million and the $12 million here, which went back to defendant. And in baby products, like the court was able to consider that, you know, part of the benefit of the settlement there was that the defense had to pay that Cypre award. Well, yes. But here, I would submit the settlement we achieved, all of it, was a real benefit to the class members. And that statement is, again, consistent with the Boeing line of cases. It's a benefit, that's true. But in baby products, as you said, which in many ways resembles this case, said courts need to consider the level of direct benefit provided to the class in calculating the fee. So that rule is already there. How is it satisfied here? Well, it's satisfied because when Judge Prater looked at that very question, she concluded that counsel, us, had adequate, had met that test. We had adequately prioritized the direct benefits to class members. Why not adopt the framework of Briseno as helpful guideposts for the district court's inquiry? Because I think you're right, district courts have to grapple with these kinds of settlements. They do seem to keep coming up. And if that's the case, why not say, here's the kinds of things that courts have thoughtfully said go into the Rule 23 analysis. We have things like reversion and clear sailing and perhaps less recovery than fees. These are the kinds of things that you want to take specific look at, which then would seem, among other things, to give you and your clients more certainty when you bring these actions. Well, for starters, the one thing I'll say about Briseno is it doesn't say what Mr. Shulman says that it says. It doesn't adopt these per se rules. In fact, it doesn't even cite to Boeing versus Van Gurmet. It doesn't cite to a case called Williams versus MGM, which is a Ninth Circuit case that had previously followed Boeing. But to answer your question, Your Honor, I think the system we have here, based on the already works fine here. And again, the district court, there are appropriate guardrails already in place. To reiterate, the district court, as we were just discussing, plays a very important role in this process. And I would add, also has the discretion to go the other way. If we come into court and we flunk the test, if Judge Prater looked at us at final approval and said, you guys didn't meet this criterion, baby. You did not directly, you know, you didn't make the class the foremost beneficiary of this settlement. Had that happened, she has the discretion under the existing regime to go the other way and to make a fee reduction. So I would submit, Your Honor, and the other reason why I don't think it would be appropriate to adopt something like that Ninth Circuit case is some of the language from Judge Ambrose in the beta case, which talks about, we want to be careful. We don't want to discourage class counsel from filing cases that have a deterrent effect that are socially valuable. And make no mistake, Your Honors, that if this rule is adopted, that's what would happen. And one last question from my part. In effect, the attorney fee in this case was $3.2 million. Is that correct? Yes. The class received $2.8 million plus $80,000 in gift cards. Plus the injunctive relief. Yes. What was the injunctive relief? The injunctive relief were business enhancements and changes that Wawa made. And I heard Mr. Schulman argue, oh, well, they would have done this anyway, and the board approved it. Well, I think the point he's missing is that that was part of the settlement agreement. And that's important because those changes were pursuant to the settlement agreement subject to a court order for a period of at least two years. So whereas if Wawa had just done that and was free to go back to its old process, what we achieved for the class was a court order in the form of a final approval order that required them to do this and maintain it for a certain period of time. And what was the total amount received by the class? The total amount received by the class was the $2.8 million. The total amount made available to the class was $9 million. And that does not include, again, the separate injunctive relief. Just one last question. The funds that are made available in the gift cards, do they expire at any time? No. And so 20 years from now, that $5 will still be there? Never receipts to the state? There's nothing like that? Nope. They do not expire. I understand they don't expire. But is there ever a point where the state can come in and ask for that under its sovereign power? Sometimes there's a time limit on gift cards being unused. Well, if there is something like that, we didn't negotiate that. It's not in the settlement. Standing here right now, I'm not aware if there's a statute that's applicable that would kick in. But what the settlement says is they don't expire. Understood. Thank you, counsel. Thank you. Parks? Thank you, Judge Mady. Good morning, Judge Freeman and Judge Fuentes. A pleasure to be here. May it please the court. Greg Parks for Defendant Wawa, Inc., also an appellee here. Wawa believes that the district court did not abuse its discretion in anything it did, but rather exercised that discretion as very well described by Mr. Johns in very thoughtful opinions that considered a wide number of factors that this court has directed district courts to consider in evaluating settlements. So I think all of that is very good. Since I asked counsel this question, what was the benefit that you saw in agreeing to not object to the attorney's fees? Certainty as to the amount of the attorney's fees, that the plaintiff's lawyers would not thereafter ask for more money. And that then allowed Wawa to effectively give more money to the class because we knew here was the amount of money that the plaintiff's lawyers were going to ask for, and they weren't going to ask for more. And it allows us to also engage in this negotiation in a two-step process, where first we agreed a relief to the class, and we provided them with a lot of valuable information that Mr. Johns recited about the value of the Wawa gift cards in doing that. And then once we agreed upon relief to the class, we could then negotiate and agree upon the amount of attorney's fees that Wawa would be willing to pay. Having that two-step process really allows Wawa to maximize its monies going to the class because it recognizes that through that second step negotiation, it can really limit the amount that it has to pay to class counsel. So we believe that actually is a benefit to the class, in addition to the one Mr. Johns cited, which is it means for less dispute. It means that we spend less time disputing that particular issue. Although, as several members of the panel have noted, Judge Prater still had and still exercised an obligation to take an overview and to have a fiduciary capacity there. The attorney fee in the cases I see is $3.2 million, is that correct? That's correct, Judge Flink. Given that, what was the total amount that was then made available to the class? $9 million was made available to the class. As both counsel have pointed out, $2.8 million of that is in gift cards, about $80,000 in cash. The reason I rose was to make it clear that, yes, Your Honor. I have trouble with the math there. $9 million is paid out and... $9 million was made available. Made available. Correct, Your Honor. For the class to claim if it chose to do so. Correct. Or members of the class, I should say. Correct, Judge Flink. That's right. Wawa made available to the plaintiff's lawyers here evidence from which they could conclude that the Wawa gift cards were very valuable, that 97.2% of Wawa gift cards are redeemed, that these gift cards do not expire. And to your question, Judge Mady, even if the state later sheets some of that money, Wawa still honors that gift card as to the customer that walks in the door. So even if Wawa does have some obligation under some state law to give up part of that money to the state, and the customer comes in the next day and says, here's my Wawa gift and then files an adjustment with the state to reclaim that money from the state if necessary. No expiration date. Correct. No expiration date. Fully transferable. So these are not coupons. These are much more like gift cards, as recognized by the INRI online DVD rental case and the Rubenstein case. And as Judge Freeman pointed out, that distinction is not on appeal here. There was not a preserved issue as to whether these were gift cards like cash or coupons. So that issue is not before the court. But to the extent the court decides to reach it, Wawa's very firm view, and it sounds like all counsel's view, is the gift cards ought to be treated like cash. My final point is that the only issue that is here on appeal that was preserved for appeal is the amount of attorney's fees. The fairness of the settlement itself to the class overall was not preserved. Although that was originally objected to, Mr. Frank withdrew his objection to the overall stipulation that was filed with the district court at docket entry 234 and is in the record before this court at joint appendix 616 and 617. Happy to answer any other questions. Very substantial attorney fee. How was it distributed? Do you know? I mean, how many lawyers were involved and so forth? I don't know that, Your Honor. I know we dealt with at least 12 class counsel. From my perspective, they did a lot of work. And they told us that they talked to over 1,000 potential class members before they settled on the 27 who actually brought claims. Although one of the other things they told us is that very few of those potential class members actually suffered any harm here. That there was not widespread fraud following this Wawa data security incident. And so that's why we didn't see significant harm to the class here. And that's why the vast majority of the class are getting gift cards that are worth $5. We believe they're entitled to something for their trouble. But there's no actual harm that has occurred to any of the class members here as far as Wawa is aware. And the plaintiff's lawyers really backed that up with a lot of research trying to find other people who might have believed to have suffered some harm. So the attorneys got the greatest benefit? The attorneys certainly got some benefit. We respectfully believe the class also gets a benefit. And that the $35 million in injunctive reef is a real benefit to the class and one that the district court appropriately considered among many other factors in evaluating the settlement, Judge Fuentes. Thank you, counsel. Thank you. Judge Shulman, we'll hear you on rebuttal. Thank you, your honors. I'd like to go back to, it seems like both Judge Freeman and Judge Mady had the same reading of the district court's opinion in which it felt constrained by third circuit precedent to reject our argument that it should value it based on the actual amount made available. And if that, we shared the reading that it did feel constrained. It said that we didn't address third circuit precedent to the contrary. And if that is the right reading, then not understanding the full scope of the district court's discretion is an abuse of discretion. Masters had that exact principle in reverse for that, exactly that reason. Um, we think the better rule is at least after the 2018 amendments, which of course, baby products didn't have the benefit of, uh, wasn't construing that you can own that, that the denominator has to be the actual amount rather than the amount made available. But, um, to the extent that, that your honors feel that baby products is, um, it, it, it requires more of a modicum of discretion for the district court. We would think that we view that the best interpretation of baby products would be that in extraordinary circumstances, in exceptional circumstances, you can go beyond the degree of direct benefit, right? There's lots of language in baby products all over the opinion. Judge Mady quoted part of it. Courts awarding attorneys fees need to consider the level of direct benefit. Class members should be made the foremost beneficiaries of the settlement, which is not the case in this settlement. Um, uh, the, the inquiry needs to be as practical as possible and not abstract. This is language all throughout the opinion. Then there's what, there's a section of the opinion, obviously, that INDICTA, um, applied bowing to the facts of that case where amount, a sum of money was made available, not all of it went to the class, some of it went to CyPrey. So we would, uh, and class counsel, and some factors that go in there, that that's an equally valuable deterrent. So what are examples of some of those extraordinary circumstances? So here's one example. From the Seventh Circuit, they have a case called Southwest, out, they post dated Redman and Pearson. It's a good example of, in that case, the, um, the, the, the recovery took, it involved expired drink vouchers on Southwest Airlines flights. The, the, and the remedy at the settlement was that we were going to make them unexpired essentially, you'd get exactly the replacement. The Seventh Circuit said that's entire, that's full compensation. You could not, you did not ask for more, you couldn't have gotten more. And so that would be a circumstance where if you get the, uh, the, the, the full, to the full limit of the law into the full request in the complaint, that in those circumstances, just as if you had won a litigated judgment, you, your, your fee after winning a litigated judgment need not be a percentage of the litigated judgment, right? It could be a full lodestar-based award. So that would... In, in this, um, scenario where, in exceptional circumstances, you're allowed to consider factors other than, uh, than claims made, uh, when would, uh, prospective relief, uh, such as, you know, additional security measures, or, uh, in this case, be appropriate to consider? Sure, and we're not, we're, we've never made the position that injunctive relief, that, um, that injunctive relief can't come into the equation for, um, the proportionality analysis under 23E. We think that this injunctive relief, um, was, um, was already approved by the board beforehand. That, you know, that factual... Let's, let's assume for sake of argument that, that, that, you know, the district court made that factual finding that it is part of the settlement and that, that, you know, your, your client didn't challenge that argument. So the, the baseline rule about prospective injunctive relief comes... There's a Ninth Circuit case, Staten v. Boeing, which says unless it can be mathematically quantified, it shouldn't be in the constructive common fund. You can use it as a factor to, like I said, enhance from 25% award to 30% if you think this is valuable, 35% if it's super valuable, you know, that sort of thing. But that doesn't, the common fund valuation, it wouldn't enter that equation unless it's mathematically determined. I don't know if you can be more specific, but the, uh, big issue here on appeal is whether the district court made a mistake in, uh, valuing the settlement, excuse me, at $9 million, rather than any other alternative it had. Right. So what, what specifically would you be seeking in this case? For the court to apply the correct rule of law, which is that the constructive common fund should consist of the amounts actually paid out to class and... What was that? And that was six, roughly $6 million in this case. To the class. That's three, so $3 million to the class, but then including the attorney's fees, those are amounts that are actually paid out. Those would be in the constructive common fund. And I'm using constructive common fund, but after we prompted the amendment, it became a pure common fund, essentially, so that the reduction would, from the attorney's fees, would go into the class funds. It would augment the gift cards. If there was to be a rule of law like you're, you're suggesting, wouldn't the 2018 amendments have been the place we would have expected to see that? Well, we, we think that's what they did by, by talking about effectiveness, because we think that effectiveness is telling district courts to look to the effective, the objectively effective outcome of the claims process. How else could you measure effectiveness, essentially? And the, the advisory committee notes suggest that that's the right, and the interesting thing was the 2003 advisory notes had already suggested that was the right, and so the 2018 notes are more like, and we really meant it when we said you look to the actual amounts paid out. Thank you, counsel. Thank you. We thank counsel for their arguments, and we will take